[No. 15092.   Department One.   April 28, 1919.]

JOHN E. SHERIDAN *et al., Respondents*, v. O. E.
DOHERTY, INCORPORATED, *Appellant.*[1]

LANDLORD AND TENANT (27, 124, 126)—ASSIGNMENT OR SUBLEASE—
RIGHT TO MAINTAIN UNLAWFUL DETAINER.  A sublease for a term be-
yond the original term, although containing independent and res-
trictive covenants not in the original lease, is not such a subletting
as will bar the relation of landlord and tenant, but its legal effect
is that of an assignment of the lease, establishing privity, and
giving the landlord the right to maintain unlawful detainer against
the one claiming as sublessee.

SAME.  The reservation in the sublease of right to re-enter for
nonpayment of rent or condition broken is not of itself a reser-
vation of any part of the estate granted, without which its legal
effect is that of assignment of the term.

SAME (148)—RECOVERY OF POSSESSION—FORM OF JUDGMENT.  In an
action of unlawful detainer, the objection that the judgment was
in form a judgment of ejectment is not available for reversal; since
the judgment will be affirmed with directions to enter formal
judgment.

Appeal from a judgment of the superior court for
King county, Jurey, J., entered January 25, 1918, in
favor of the plaintiffs, upon overruling a demurrer to
the complaint, in an action of unlawful detainer.  Af-
firmed.

*Hughes, McMicken, Ramsey & Rupp* and *John P.
Garvin,* for appellant.

*Ryan & Desmond,* for respondents.

CHADWICK, C. J. — The facts of this case are ad-
mitted.  One Gerald was a sublessee of the Seattle
Brewing & Malting Company, which held by lease
from the Gottstein Investment Company, the owner.
The lease from the Investment Company to the Brew-
ing Company, as well as the lease from the Brewing

[1]Reported in 181 Pac. 16.

Company to Gerald, expired on August 31, 1917. On November 1, 1916, Gerald sublet a part of the premises to the appellant for a term expiring August 31, 1921. Unlike the two former leases, appellant's lease contained several restrictive covenants and clauses. The lease of the Brewing Company and the lease of Gerald, having expired by limitation on August 31, 1917, and not having been renewed, the owner (Gottstein Investment Company) leased the entire premises to respondents. Appellant refused to quit upon demand. A notice was served under the forcible entry and detainer statute, and after three days appellant was ousted under the process of the court. The ouster was sustained at the trial, and judgment entered.

The principal reliance of appellant is that, whereas, an action of unlawful detainer will not lie unless the conventional relation of landlord and tenant exists between the parties (*Meyer v. Beyer,* 43 Wash. 368, 86 Pac. 661; *Shannon v. Grindstaff,* 11 Wash. 536, 40 Pac. 123; *Seattle Operating Co. v. Cavanaugh,* 6 Wash. 325, 33 Pac. 356); and there being no such relation by contract or by estoppel resting in the conduct of the parties, the court was in error in overruling its demurrer to the complaint and entering judgment upon the admitted facts.

It is admitted that ejectment will lie, but it is argued that, having seized upon the summary remedy given by statute in aid of the right of a landlord to re-possess himself of his property at the termination of a lease, the court must accept the theory of the appellant and proceed only in the exercise of its special jurisdiction; that it cannot try out the general issue of title and take a judgment which is in legal effect a writ of ejectment. *State ex rel. Seaborn Shipyards Co. v. Sup'r Ct.,* 102 Wash. 215, 172 Pac. 826; *Jeffries v.*

*Spencer,* 86 Wash. 133, 149 Pac. 651; *Big Bend Land Co. v. Huston,* 98 Wash. 640, 168 Pac. 470.

Whether this conclusion logically follows depends upon the soundness of the premise assumed by counsel—that is, that there is no privity of contract or estate between the parties and hence no relation of landlord and tenant.

It is argued that the owner or one claiming under him cannot maintain unlawful detainer unless it is shown that the defendant holds in the same estate as the one who stands in immediate contractual relation with the owner or his immediate successor in interest. In other words, that, appellant having taken possession under a lease containing restrictive clauses and covenants differing in form from the conditions and covenants contained in the contract of his immediate lessor, there is no such privity of estate or contract as will sustain a summary proceeding; that a forcible detainer implies a breach of contract, and appellant being in no way answerable to respondents, either by express words or by the implication of its contract, they must find their remedy, if any, in ejectment.

To sustain this theory, we must assume as a premise that the demise from Gerald to appellant is in fact and in law a sublease. It is established that, if a lessee sublet the premises or a portion of the premises for the entire term or the remainder of a term, the subletting will operate as an assignment either of the entire estate or *pro tanto* as the case may be. Tiffany, Landlord and Tenant, § 151; Taylor, Landlord and Tenant (9th ed.) § 16; Underhill, Law of Landlord and Tenant, § 624; McAdam, Landlord and Tenant (4th ed.) § 233.

In *Weander v. Claussen Brewing Ass'n,* 42 Wash. 226, 84 Pac. 735, 114 Am. St. 110, the question was

whether the relation of landlord and tenant existed. between the owner and a sublessee of a part of the premises for the entire term. The court said:

"In order to pass upon this question it is necessary to determine what was the legal effect of the written instrument which they jointly executed. Appellant contends that it was a lease, and that it constituted him a tenant of respondent, while the latter urges that it was in law an assignment and not a lease, for the reason that it transferred all rights which respondent acquired from its lessor, including the entire term under its lease, with no reversionary interest reserved. The instrument is in the form of a lease, and contains apt words designating it as such; but it covers the entire term which respondent had acquired by its own lease. No portion of the term whatever is reserved for reversion to respondent. It is conceded that the terms and covenants of the instrument are in the exact words of the lease held by respondent, and no other or new covenants are included therein. We think, under the authorities, that the legal effect of such an instrument is that of an assignment in full of the lease by its holder; that it is not a new lease, which creates a new lessor and subtenant, with the relation of landlord and tenant between the two, but the new nominal lessee becomes an assignee of the whole leasehold estate affected."

So if Gerald had sublet to appellant in the terms of his own lease and for a term equal in time, respondents could maintain an action of unlawful detainer upon the expiration of Gerald's term unembarrassed by the plea that the conventional relation of landlord and tenant did not exist.

The controlling question, then, is whether a sublease for a term beyond the original term — the sublease containing independent and restrictive covenants distinguishing it in form from the contract of the immediate lessor with the owner or landlord—is a sub-letting which will bar the relation of landlord and

tenant, or is an assignment entire or *pro tanto* which will create the relation and thus give the owner or one claiming under him avail of the right to maintain unlawful detainer as against a sublessee holding over after the expiration of the original term.

It is said, with much show of reason and sustaining authority, that the relation of landlord and tenant never exists between the owner and a subtenant, for there is neither privity of contract nor of estate to sustain the relation. 16 R. C. L., p. 879; *Shannon v. Grindstaff, supra.* We are not inclined to raise the question whether the contract as between Gerald and appellant was one other than of subtenancy; for the transaction may be called a lease between the second and third parties and nevertheless operate as an assignment as between the original lessor and such third party. 16 R. C. L., pp. 824, 825. When the question is raised between the owner and the sublessee, the courts have not hesitated to look to the legal effect of the contract. No importance is attached to the words "demise" or "lease" or to the form, covenants or conditions of the contract if its legal effect be to convey the entire term. Underhill, Landlord and Tenant, § 626; *Woodhull v. Rosenthal,* 61 N. Y. 382.

It is upon this principle that a subletting for the entire or remainder of a term is held to be an assignment, giving the owner a right to maintain an action of unlawful detainer as against one claiming as a sublessee is sustained. There is another principle—and we deem it to be decisive of this case; it is that, in order to sustain a sublease, there must be a reversionary interest in the premises, however small it may be. The only covenants which may be relied upon to assert or sustain a reservation of a reversion in Gerald (his demise being for a time beyond his term) is a right to re-enter for nonpayment of rent or condition broken.

But it is held that a right of re-entry for condition broken or for the nonpayment of rent cannot exist as an independent condition, but only as an incident to an estate or interest for the protection of that for which it is reserved.

"A mere reservation of rent, or a reservation of a right of re-entry for a breach of any of the conditions of the lease, will not change the legal relation of the parties . . . . and the introduction of new covenants into the instrument, does not change the legal effect of giving up the reversion." Wood, Landlord and Tenant (2d ed.), p. 179, note.

The right of re-entry for nonpayment of rent or for condition broken, is not of itself a reservation of a reversion or any part of the estate granted, but is a mere chose in action.

"When enforced, the grantor is in through the breach of the condition, and not by the reverter." *Craig v. Summers,* 47 Minn. 189, 49 N. W. 742, 15 L. R. A. 236.

See, also, *Weander v. Claussen Brewing Ass'n,* 42 Wash. 226, 84 Pac. 735, 114 Am. St. 110, and cases there cited; *Ohio Iron Co. v. Auburn Iron Co.,* 64 Minn. 404, 67 N. W. 221; Underhill, Landlord and Tenant, § 626.

But if we grant that Gerald had a reversionary interest up to the time his lease expired, it ceased when he quit, leaving the sublease in legal effect no more than an assignment for his term.

"A lease by a lessee to a third person, extending beyond his own term, is not a sublease, but is in legal effect an assignment of his lease." *Mulligan v. Hollingsworth,* 99 Fed. 216 (syllabus).

"So, if lessee for three years assigns his term for four years, or demises the house for four years, he does not by this gain a tortious reversion, and it does but amount to an assignment of his interest." *Hicks v. Downing,* 1 Lord Raymond, 99.

See, also, *Wollaston v. Hakewill*, 3 Man. & G., 297;
Taylor, Landlord and Tenant (9th ed.), § 111.

It seems fundamental that Gerald could not transfer
a greater interest or estate in the premises than he
could assert against his own landlord.

"The transfer . . . . of the tenant's entire in-
terest in the whole premises, leaving no reversion in
him, has almost invariably been regarded, not as a
sublease but as an assignment . . . . And the fact
that the transfer is in form a sublease, or reserves
rights as against the transferee similar to such as are
ordinarily reserved on a lease, has ordinarily been
considered immaterial." Tiffany, Landlord and Ten-
ant, § 151.

The covenants relied on to take this case out of these
rules in no way touch the reversion. They are per-
sonal to Gerald, and when his interest expired by the
lapse of time, they lost all their contractual force. The
condition that appellant would not keep, sell or give
away intoxicating liquors upon the premises, and like
conditions, were purely personal, and in no way affect
the primary estate or reversion. Therefore, to sustain
itself under the covenants and restrictive clauses of its
lease, appellant must show that some fragment of the
term remains in its lessor. To hold otherwise, would
put us to the extremity of holding that a transfer, in
form a sublease coequal in time with the original lease,
would be an assignment making the sublessee liable
as a tenant holding over; but if the original lessee as-
sumes to grant more than the whole of his estate, his
grantee will be protected as a sublessee, and as such
may insist upon ejectment instead of the more sum-
mary remedy of unlawful detainer. The legal effect of
an assignment of a lease is to put the assignee in the
shoes of the assignor. This is but another way of say-
ing that the sublessee cannot claim more as against

the owner or one claiming under him than the immediate lessor could have claimed.

When we have determined that the demise is in legal effect an assignment, and not a subletting, it follows that we must hold that the owner or one claiming under him may oust appellant as one holding over after the expiration of his term, for the privity of estate is established.

"If the sublease so effectually passes the whole term that it must be held to be an assignment, then privity of estate is established, and the sublessee becomes bound by the covenants of the original lease, irrespective of his intention." *St. Joseph & St. L. R. Co. v. St. Louis, I. M. & S. R. Co.*, 135 Mo. 173, 36 S. W. 602, 33 L. R. A. 607.

See, also, *Shannon v. Grindstaff*, 11 Wash. 536, 40 Pac. 123; *Capital Brewing Co. v. Crosbie*, 22 Wash. 269, 60 Pac. 652.

So that, whether the duty of appellant to quit at the expiration of the term of its immediate lessor lies in the covenants of the lease to Gerald or arises out of the statute or the general rules of law, the result is the same—he is a tenant holding over; the conventional relation of landlord and tenant is established, and he may be ousted by summary process.

It is complained that the court entered a judgment in form a judgment of ejectment; but, if this be granted, it cannot avail appellant. The case of *State ex rel. Seaborn Shipyards Co. v. Superior Court* is not in point. We held in that case that one who came into court under the forcible entry and detainer statute (Chapter II, Title VI, Rem. Code) could not, by amendment to his pleadings, convert his action into one for ejectment. This, because of the special jurisdiction exercised by the court in such cases. Here the case was brought as one for unlawful detainer and was

tried as such. If the court committed error in the form of its judgment, why, we are here for the correction of such errors.

The judgment will be affirmed with directions to enter a formal judgment under the statute.

Main, Mackintosh, Tolman, and Mitchell, JJ., concur.