[No. 3324-1.    Division One.    January 31, 1977.]

THE STATE OF WASHINGTON, *Petitioner*, v. ELMER L. SPENCER, ET AL, *Respondents*, SOCONY MOBIL OIL COMPANY, *Appellant.*

*Bogle & Gates, Thomas L. Morrow, M. Bayard Crutcher,* and *Robert W. Graham,* for appellant.

*Moriarty, Long, Mikkelborg & Broz* and *Jeremiah M. Long,* for respondents.

WILLIAMS, C.J.—The purpose of this action is to deter-

mine the distribution of an award of $363,000 deposited in court by the State in a condemnation proceeding. The sole issue presented is whether the court was correct in assessing the value of the lessee's interest, only, and giving the balance to the landowner without evidence of the value of his interest. We hold this method of apportionment was error and reverse.

The situation is that on December 18, 1973, the State as condemnor, Elmer L. and Alice M. Spencer as owners of the land, Mobil Oil Corporation as lessee of a part of the land, and others, agreed to the entry of a "stipulated judgment and decree of appropriation" which ordered the State to pay $363,000 as the just compensation for the land appropriated. The State deposited that sum in court. Subsequently, the present action came to trial as permitted by RCW 8.04.140 which provides that

> if, upon application, the court or judge thereof should decide that the title to the land, real estate or premises specified in the application of such claimant was in such condition as to require that an action be commenced to determine the conflicting claims thereto, he shall refuse such order until such action is commenced and the conflicting claims to such land, real estate or premises be determined according to law.

The court conducted the trial and entered its findings of fact and conclusions of law on the theory that Mobil was entitled to receive from the fund on deposit the amount it proved was the value of its interest, *Woodward v. Blanchett*, 36 Wn.2d 27, 216 P.2d 228 (1950), and that the value of the Spencers' interest was what was left. Judgment was entered accordingly, distributing $75,033 to Mobil with the balance to the Spencers.

Mobil argues that the trial court was required to find the value of each party's interest in the land and then distribute the total award on a pro rata basis. The Spencers argue that the trial court was right because the value of the property was established by the December 18, 1973, stipulated judgment from which no appeal was taken, and that Mobil's leasehold was properly valued as the difference

between the rent reserved and the rental value during the unexpired term of the lease plus the value of the improvements and equipment. That evaluation was therefore res judicata and may not be collaterally attacked, and the only task remaining for the court was to determine the value of Mobil's leasehold interest.

■ The question of the finality of the stipulated judgment in the apportionment proceedings is decided, adversely to the Spencers, in *Pacific Nat'l Bank v. Bremerton Bridge Co.*, 2 Wn.2d 52, 97 P.2d 162 (1939). There, the parties owning interests in the property subject to condemnation by the state requested a jury trial to determine the value of the property. Kitsap County, which had taxes coming, consented to an order of default "in those proceedings." The jury valued the property at $354,000 and judgment was entered requiring the State to deposit that sum in court. The property owners then stipulated to the disbursement of the total award, leaving the county out. The county demanded payment of the taxes, and the trial court decided in an interpleader action that the county was barred from recovery by the judgment in the eminent domain proceedings. The Supreme Court reversed, stating:

> In the eminent domain proceedings, the preliminary question was one upon which the respondent and the county were not adversaries. No dispute existed between them concerning the adjudication of public use or the amount of compensation to be awarded for the property. The matter of the disposition of the award was collateral to those issues. Although, undoubtedly, the county was a proper party to the action, and although our eminent domain statute contemplates that the rights of all parties may be adjudicated in such action, the rights are not all to be adjudicated at any one particular stage, but only at appropriate times.
>
> The rights of the county did not become material in the case until and unless the award was paid into court and the time ripe for its distribution. Since the order of default was, as we have hereinabove held, limited in its effect, the county was still a party to the general proceeding and was entitled to notice of distribution of the award. It did not receive notice, and consequently the

order of distribution was not binding upon it and, therefore, was not *res judicata* as to the county's claim.

*Pacific Nat'l Bank v. Bremerton Bridge Co., supra* at 59-60.

The Spencers and Mobil were not adversaries but associates in the first stages of the eminent domain proceedings; the taking of the property and the payment were accomplished without reference to the conflicting interests of the claimants. *State ex rel. Peel v. Clausen,* 94 Wash. 166, 162 P. 1 (1917); *State ex rel. Long v. Superior Court,* 80 Wash. 417, 141 P. 906 (1914). Division of the award was not brought up for adjudication at that time. When the appropriate time did come, in this proceeding, the court had the duty to determine the value of the interest which each party had in the land. As was said in *Pierce County v. King,* 47 Wn.2d 328, 287 P.2d 316 (1955) at 333:

> [T]he sum paid into the registry of court represents the land itself and must be distributed among those having an interest in the land in accordance with their claims. The power of the court to distribute the fund between rival claimants is not only statutory, but is a matter of general equity. *Pacific Nat. Bank of Seattle v. Bremerton Bridge Co.,* 2 Wn. (2d) 52, 97 P. (2d) 162.

The issue, then, is should the trial court have awarded the market value of the lease to the lessee, as it did, the remainder going to the landlord, or should the trial court have ascertained the market value of the leasehold interest and the remainder interest and divided the $363,000 pro rata. The first method was used in *In re Delancey St.,* 120 App. Div. 770, 105 N.Y.S. 779 (1907); the second in *People ex rel. Department of Pub. Works v. Los Angeles,* 220 Cal. App. 2d 345, 33 Cal. Rptr. 797 (1963). We believe the method used in the Los Angeles case is more equitable.

Although the State as condemnor and the owners as condemnees agreed that $363,000 was just compensation, the owners did not agree that the fair market value of their respective interests would be determined by reference to that figure, which was not necessarily the fair market value. Rather, it was the best bargain the owners could strike with the State in the condemnation proceedings. The

price paid by the State may have been too high or too low. If it was too high, the owners who made the bargain should reap the benefit of it; if it was too low, the owners should share the disappointment. The only way for the court to equitably apportion the proceeds of the condemnation is to ascertain the fair market value of each interest in the property and give each owner his proportionate share.

The judgment is reversed and a new trial directed.

SWANSON and CALLOW, JJ., concur.

Petition for rehearing denied May 16, 1977.

Review by Supreme Court pending September 29, 1977.