[No. 45003.   En Banc.   August 24, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. ELMER L.
SPENCER, ET AL, *Petitioners,* SOCONY MOBIL
OIL COMPANY, *Respondent,* THE CITY OF
AUBURN, ET AL, *Respondents.*

*Moriarty, Long, Mikkelborg & Broz* and *Jeremiah M. Long,* for petitioners.

*Bogle & Gates, Thomas L. Morrow, M. Bayard Crutcher,* and *Robert W. Graham,* for respondent.

HAMILTON, J.—We granted a petition for discretionary review in order to consider the propriety of equitable apportionment of a lump–sum condemnation award; that is, a proportional distribution of a lump–sum award based upon the ratio each separately valued condemned interest bears to the total of all separately valued interests.[1] The trial court refused to apportion the award. The Court of Appeals reversed the trial court and ordered equitable apportionment. *State v. Spencer,* 16 Wn. App. 841, 559 P.2d 1360 (1977).

We affirm the Court of Appeals.

The State undertook to condemn approximately 2.6 acres of an irregular shaped tract of approximately 3 acres of semi–vacant land owned by Elmer L. and Alice M. Spencer (petitioners before this court). A portion of the property was subject to a lease held by Socony Mobil Oil Company (respondent before this court) and several other minor interests not relevant to this appeal.

---

[1] For example: When a lump–sum award is $400,000 and the only two interests in realty to be compensated are separately valued at $50,000 and $150,000, each would take its proportional share of $400,000, 1/4 (50/200) and 3/4 (150/200) respectively, *i.e.,* $100,000 and $300,000.

If, on the other hand, the lump–sum award was only $100,000 and the respective interest values were the same as indicated above, the proportional shares would be $25,000 and $75,000.

Petitioners, respondent, and the other interest holders entered into a "Stipulated Judgment and Decree of Appropriation", the terms of which required the State to pay $393,500 for all interests in the 2.6 acres which it condemned. The State thereupon paid this amount into the court's registry and took possession of the condemned property. Subsequently, the minor interest holders agreed to a partial distribution of the condemnation award and their interests were extinguished. Respondent, however, after filing notice of its intent to claim a portion of the award, did not reach an agreement as to the amount to which it was entitled. Accordingly, the issue of the portion of its interest in the award was set for trial.

At the time of trial, respondent urged the court to value both its interest as well as petitioners' interest and, based upon the total of the separately valued interests, grant each a proportionate share of the condemnation award. As indicated, the trial court declined apportionment. Instead, it awarded respondent $75,033; the amount which it found to be the fair market value of respondent's leasehold interest. Petitioners, who held the sole remaining interest to be compensated, were awarded the remaining balance of the condemnation award.

Respondent appealed the trial court's judgment to Division One, Court of Appeals. There, it successfully argued that apportionment was the proper approach to distribution. *State v. Spencer, supra.* Petitioners then sought discretionary review in this court pursuant to RAP 13.3 and 13.4.

Petitioners first contend the unappealed stipulated judgment was a final judgment on the value of the condemned property. They reason that respondent sought and the Court of Appeals permitted a collateral attack on a final judgment by ordering valuation of *both* lessee's and lessor's interests. This is so, they argue, because the total of the two interests as fixed in the distribution proceeding may vary from the total amount of the stipulated judgment.

■ It could be argued that a collateral attack has been permitted if the stipulated judgment was in fact a final and appealable resolution of the lessee's and lessor's *conflicting* interests. However, we have recognized *that in some cases* the taking of property and payment therefor may be accomplished without reference to the conflicting interests of claimants. *See, e.g., Pacific Nat'l Bank v. Bremerton Bridge Co.,* 2 Wn.2d 52, 97 P.2d 162 (1939); *State ex rel. Peel v. Clausen,* 94 Wash. 166, 162 P. 1 (1917); *State ex rel. Long v. Superior Court,* 80 Wash. 417, 141 P. 906 (1914). In order to determine whether this is such a case, we must examine the statutes applicable here.

The statutory chapter under which petitioners' case proceeded to judgment—RCW 8.04 (eminent domain by state)—permits, under certain circumstances, lump–sum awards to be initially determined. Its terms provide that applications for a portion of the lump–sum award and resolution of conflicting claims may be reserved until a later proceeding. RCW 8.04.110; RCW 8.04.140. This is to be contrasted with statutory schemes which may direct the initial assessment of separate identifiable awards for each interest. (*See, e.g.,* Laws of 1891, ch. 74, § 5, p. 141, a predecessor to RCW 8.04 and RCW 8.20.080.) Where separate awards are contemplated or required by a statutory scheme, all conflicting claims whether to the award or in the property clearly could be resolved by the rendering of a verdict or judgment fixing the value of and compensating each individual interest holder.

In cases such as here where an undivided total lump sum is initially awarded, there is no specific identifiable compensation made to individual interest holders. As the Court of Appeals pointed out, at the time when such a lump–sum award is made, holders of the various interests in property are not even adversaries. In negotiations for a lump–sum award they are merely allies seeking just compensation for condemned property. Their *conflicting* claims become material, and presumably will be fully litigated, not at the time when a lump–sum award is negotiated, but rather *at*

*the time of distribution.* Thus, prior to that time it cannot be said there has been a final resolution of the conflicting claimant's individual interests and their respective rights in the lump–sum award.

In petitioners' case, the stipulated judgment was a lump–sum award made without reference to the conflicting interests of claimants. In seeking equitable apportionment, in which both lessee's and lessor's interests are valued, respondent has not collaterally attacked a final judgment which resolved the lessee's and lessor's conflicting interests. The Court of Appeals was correct in its holding on this question. Thus, the issue becomes: Was it error to order equitable apportionment? Under the facts and circumstances of this case the order was not erroneous.

■ There is a clear distinction between the court's power to assess damages and its power to apportion awards. In condemnation proceedings, the court has no equitable powers to assess damages; however, the rule is to the contrary where apportionment of an award is concerned. *State v. Meador,* 60 Wn.2d 543, 374 P.2d 546 (1962); *Pacific Nat'l Bank v. Bremerton Bridge Co., supra.* Thus, at the outset, we note that any suggestion that the court was without the power to order equitable apportionment is without merit.

As the court clearly has the power to order equitable apportionment, we need only determine whether such an order is appropriate under the applicable statute and the facts and circumstances of this case.

■ It appears to us that the statutory provisions applicable in this case are uniquely well suited for the application of equitable apportionment when a proper case is presented. *See* RCW 8.04 *et seq.* The statutes authorize a 2–step procedure whereby a lump–sum award is first made for the total damages which result to all interests. RCW 8.04.110. Thereafter, any person claiming entitlement to the award may apply to the court for an order directing that they be paid. RCW 8.04.140. Under the statutes, distribution of the lump–sum award is upon application, and a *separate* proceeding may be commenced to determine the

amount to which a claimant is entitled. The valuation of each interest and distribution of an award is in fact statutorily facilitated.

A tenant's right, in certain circumstances, to share pro rata in lump–sum awards paid over in eminent domain proceedings has been recognized and commented upon in the Restatement (Second) of the Law of Property § 8.2 (1977). The Restatement provides, in pertinent part:

> (2) Except to the extent the parties to a lease validly agree otherwise, the tenant is entitled to share in a lump–sum award made in the eminent domain proceedings, which lump–sum award is for his and other interests in the property condemned and the tenant's share in the lump–sum award is:
>
> (a) if the lease is terminated by the taking, that proportion of the lump–sum award which corresponds to the proportion of the total value of the several interests in the property condemned, valued separately, that represents the value of the unexpired period of the tenant's lease, plus the value discounted to the date of the taking of the payments the tenant is required to make to the landlord even though the lease is terminated; or
>
> (b) if the lease is not terminated by the taking, that proportion of the lump–sum award which corresponds to the proportion of the total value of the several interests in the property condemned, valued separately, that represents the value of a lease of the part of the leased property taken for the unexpired period of the original lease at a rent equal to the difference between the rent reserved in the original lease and the rent payable by the tenant under the original lease after the taking.

This approach has been used pursuant to state statute and has been suggested by various courts as a solution to distribution when the amount of an award is disproportionate to the total value of the interests. *See People ex rel. Dep't of Public Works v. Lynbar, Inc.,* 253 Cal. App. 2d 870, 62 Cal. Rptr. 320 (1967); *State ex rel. State Highway Comm'n v. Burk,* 200 Ore. 211, 265 P.2d 783 (1954); *Lambert v. Giffin,* 257 Ill. 152, 100 N.E. 496 (1912).

We believe pro rata distribution of an award can bring

about equity in certain cases. As the Court of Appeals stated: "If [the award] was too high, the owners who made the bargain should reap the benefit of it; if it was too low, the owners should share the disappointment." *State v. Spencer, supra* at 845. Clearly, in those cases where it has become obvious that an earlier award is disproportionately large or small, equitable apportionment provides a fair and workable alternative which the court may use in effecting distribution.[2]

Petitioners argue, however, that use of this alternative disturbs concepts of just compensation. They contend the stipulated judgment settled the question of the fair market value of the land. And, to the extent that the total of the separately valued interests differs from the stipulated judgment, they argue their right to just compensation will be impaired.

The Court of Appeals succinctly answered this contention when it stated:

> Although the State as condemnor and the owners as condemnees agreed that $363,000 [*sic*] was just compensation, *the owners did not agree that the fair market value of their respective interests would be determined by reference to that figure,* which was not necessarily the fair market value. Rather, it was the best bargain the owners could strike with the State in the condemnation proceedings.

(Italics ours.) *State v. Spencer, supra* at 844.

Until the fair market value of the respective interests is determined, just compensation *for the separate interests* has not been determined. In the ordinary case where condemned property is subject to the interests of an owner–

---

[2] In this case it appears the trial court judge believed he had no discretion to order equitable apportionment. A reading of the memorandum decision indicates the judge was of the opinion that under the law controlling *damages* the lessee was entitled to the fair market value lease and no more. As we note, however, there is a distinction between the assessment of damages and apportionment of an award. In apportionment, an award may be distributed equitably when the facts and circumstances warrant it, even though *damages* are based on fair market value.

lessor and a lessee, determination of the value of one interest, *e.g.*, the lessee's, and subtraction of that amount from the whole can be expected to leave a remainder closely approximating the fair market value of the lessor's interest. But in cases where an award is disproportionately large or small, this technique does not produce the expected result and, as a consequence, it does not do equity nor does it assure fair distribution. Thus, those cases permit the value of each separate interest to be determined and the award distributed based upon each claimant's proportional interest in it.

■ Petitioners further argue that if we adopt this approach, lienors could share pro rata in condemnation awards. They point out such a result would be undesirable, particularly in the case of a disproportionately large award. Petitioners' example, however, fails to distinguish the right to share in an award having its basis in some sort of security interest from the right to share in an award which has its basis in a proprietary interest. Proprietary interests are estates *in the land.* Only those parties with estates in the land share in apportionment; the security interest is simply paid off as a debt of the estates. 1 L. Orgel, *Valuation under the Law of Eminent Domain* 541 (2d ed. 1953). Petitioners' argument on this point fails to convince us that equitable apportionment is inappropriate.

Petitioners' case presents a factual setting in which we believe it was appropriate to order, as did the Court of Appeals, the separate valuation of each interest and equitable apportionment of the lump–sum award. At trial, respondent's interest was valued at $75,033, and the remaining balance of the award was simply given to petitioners. Yet it appeared from the testimony that respondent's service station was the sole improvement on the condemned property. The property itself was irregular in shape, somewhat swampy, and any additional development of the site would have been hampered because of a lack of sewers. *Petitioners offered no testimony regarding the value of their interest* as under the trial court's ruling it

was not in issue. Respondent's expert, however, offered testimony indicating it was worth substantially less than the balance of the lump–sum award. Quite clearly, the use of equitable apportionment was appropriate under these facts and circumstances.

Accordingly, we affirm the Court of Appeals decision which reversed the trial court, directed equitable apportionment, and ordered a new trial.

WRIGHT, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.